IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

VIVIAN L. BROOKS,                         Civil No. 07-1193-AA
                                          OPINION AND ORDER
    Plaintiff,

  vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

---

David B. Lowry
9900 SW Greenburg Road
Columbia Business Center, Suite 235
Portland, Oregon 97223
    Attorney for plaintiff

Karin Immergut
United States Attorney
District of Oregon
Britannia Hobbs
Assistant United States Attorney
1000 S.W. Third Avenue
Portland, Oregon 97204-2902

Thomas M. Elsberry
Special Assistant U.S. Attorney
Social Security Administration
701 Fifth Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075
    Attorneys for defendant

AIKEN, Judge:

    Claimant, Vivian Brooks, brings this action pursuant to the Social Security Act (the Act), 42 U.S.C. §§ 405(g) and

1   - OPINION AND ORDER

1383(c)(3), to obtain judicial review of a final decision of the Commissioner denying her application for Supplemental Security Income (SSI) disability benefits under Title XVI of the Act. For the reasons set forth below, the Commissioner's decision is reversed and remanded for additional administrative proceedings.

**PROCEDURAL BACKGROUND**

Plaintiff protectively filed an application for SSI on February 19, 2004. Tr. 79-82. Plaintiff alleged disability beginning May 23, 1999 due to a Histrionic Personality Disorder, Dysthymia, Personality-Conduct Disorder, and an Affective Mood Disorder. Tr. 35-36. After the application was denied initially and upon reconsideration. On November 10, 2004, plaintiff requested a hearing. Tr. 54. On April 18, 2006, an administrative law judge (ALJ) held a hearing. On June 20, 2006, the ALJ issued an opinion finding plaintiff not disabled. The Appeals Council then denied review. Tr. 7-10. Plaintiff filed prior disability applications in 2001 and 2003, which were denied, however plaintiff did not appeal those denials to an ALJ. Tr. 27.

**STATEMENT OF THE FACTS**

Plaintiff is presently employed as a part-time care giver for seniors, disabled persons and veterans. She works approximately 80 hours a month for $9.28 per hour. She has worked at the job since October 2004. The ALJ ruled that this work did not constitute substantial gainful activity as the monthly amount was under the threshold. Tr. 566. Plaintiff currently lives with her roommate. She last worked at a full-time job in May 1987. She stopped working after she was injured

2   - OPINION AND ORDER

on the job at the restaurant where she worked as a waitress. Tr. 569.

## STANDARD OF REVIEW

This court must affirm the Secretary's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)). The court must weigh "both the evidence that supports and detracts from the Secretary's conclusions." Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986).

The initial burden of proof rests upon the claimant to establish disability. Howard v. Heckler, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A).

The Secretary has established a five-step sequential process for determining whether a person is disabled. Bowen v. Yuckert, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1502, 416.920. First the Secretary determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. Yuckert, 482 U.S. at 140; 20 C.F.R.

3    - OPINION AND ORDER

1  §§ 404.1520(b), 416.920(b).

2  In step two the Secretary determines whether the claimant
3  has a "medically severe impairment or combination of
4  impairments." Yuckert, 482 U.S. at 140-41; see 20 C.F.R.
5  §§ 404.1520(c), 416.920(c). If not, the claimant is not
6  disabled.

7  In step three the Secretary determines whether the
8  impairment meets or equals "one of a number of listed impairments
9  that the Secretary acknowledges are so severe as to preclude
10 substantial gainful activity." Id.; see 20 C.F.R.
11 §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively
12 presumed disabled; if not, the Secretary proceeds to step four.
13 Yuckert, 482 U.S. at 141.

14 In step four the Secretary determines whether the claimant
15 can still perform "past relevant work." 20 C.F.R.
16 §§ 404.1520(e), 416.920(e). If the claimant can work, she is not
17 disabled. If she cannot perform past relevant work, the burden
18 shifts to the Secretary. In step five, the Secretary must
19 establish that the claimant can perform other work. Yuckert, 482
20 U.S. at 141-42; see 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) &
21 (f). If the Secretary meets this burden and proves that the
22 claimant is able to perform other work which exists in the
23 national economy, she is not disabled. 20 C.F.R. §§ 404.1566,
24 416.966.

**DISCUSSION**

26 1. The ALJ's Findings

27 In step one, the ALJ found that plaintiff had not engaged
28 in substantial gainful activity during the relevant time period.

4   - OPINION AND ORDER

Tr. 29. At step two, the ALJ found that plaintiff had the following severe impairments: affective disorder, pain disorder, anxiety disorder, and personality disorder. Tr. 29-30. At step three, the ALJ found that plaintiff had no impairment or combination of impairments that met or equaled one of the listed impairments in 20 C.F.R. pt. 404, subpt. P, app. 1. Tr. 30-31. At step three, the ALJ found that plaintiff retained the residual functional capacity (RFC) to perform all exertional levels of work and could understand and carry out simple tasks in a routine setting with no contact with the general public. Tr. 31-33. At step four, the ALJ found plaintiff had no past relevant work. Tr. 33. Finally, at step five, the ALJ found plaintiff could perform a significant number of other jobs existing in the national economy, including but not limited to packing line worker, janitor, and injection molding machine operator. Tr. 33-34.

2. <u>Plaintiff's Allegations of Error</u>

A. <u>The ALJ Erred in Finding Plaintiff Did Not Establish Any Severe Physical Impairment</u>

Plaintiff objects to the ALJ's step two finding that there was no evidence that plaintiff had any physical impairment that resulted in any significant work-related functional limitations for any 12-month period. Pl's Brief, p. 16-20.

Plaintiff has the burden of proving that she had a severe impairment, or combination of impairments, which lasted or was expected to last for a period of twelve months. 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 416.905, 416.912. The Commissioner's rulings and regulations provide that an impairment will be found

5   - OPINION AND ORDER

disabling if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(c); SSR 96-3p. The term "basic work activities" is defined as the abilities and aptitudes necessary to do most jobs. 20 C.F.R. § 416.921(b).

The ALJ relied on the opinion of one-time examining physician, Dr. Webster, who said that plaintiff had a Somatoform Disorder and found there is "unlikely to be an organic cause of the woman's discomfort" based upon her "odd gait," "variety of places she hurts," and "extraordinary variety of pain behavior." Tr. 362-65. The ALJ stated:

> In light of the examination with Dr. Webster in which claimant displayed numerous inconsistencies and no Physical diagnosis was reached, the undersigned finds she has no severe physical impairment. While she has been diagnosed with bursitis and tendinitis on various occasions, there is no evidence these impairments resulted in any significant work-related functional limitations for any 12 month period.

Tr. 30.

Dr. Webster indicated that he reviewed "some notes from her primary care physician" noting depression along with pain in her hips, buttocks and sacroiliac joints and treatment with injections, Xanax and Vicodin. Tr. 362.

Plaintiff relies on the opinion of treating physician, Dr. Chestnutt, along with the opinions of several treating Kaiser doctors. Dr. Chestnutt treated plaintiff beginning May 11, 1998 until January 2002. Tr. 300-310. Dr. Chestnutt diagnosed Thoracic Outlet Syndrome (TOS) in plaintiff's right arm. Tr. 309-10. Dr. Chestnutt wrote:

6    - OPINION AND ORDER

> The physical findings are both real and significant, and have caused significant disability by themselves, but have certainly caused her significant distress and emotional distress. These have been very difficult to treat medically since they are affecting her pelvic bones, muscles, and ligaments. She sustained ligamentous injury in her sacroiliac joints, as well as in her back, neck and head . . . . These specific injuries are well outlined in a note from a visit with Ms. Brooks on September 24, 2001 [Tr. 303-04] . . . but in summary she does have significant dysfunction, myofascial that is, dysfunction in her pelvis, as well as her low back and her hips. These are the most significant areas, although she has some additional issues in her legs, shoulders, and neck that are related.

Tr. 301.

Additional progress and treatment notes from Dr. Chestnutt and Oregon Health Sciences University (OHSU) from September 28, 2001, through June 17, 2004, document treatment for hip pain, leg pain, back pain and depression. Tr. 242-279. On May 22, 2002, plaintiff was again examined by Dr. Chestnutt, who assessed probable neuritis in her foot, possibly due to a Morton's neuroma. She also had continuing left leg pain and moderately severe depression. On September 30, 2002, Dr. Chestnutt described plaintiff as being in "significant psychological distress." He changed her medications at that time. Tr. 264. On January 16, 2003, Dr. Chestnutt examined plaintiff and diagnosed trochanteric (hip) bursitis, back pain, left thigh numbness, leg weakness and instability, among other issues. Tr. 257. Plaintiff was given a medication (injection) for the trochanteric bursitis. On February 13, 2003, Dr. Chestnutt gave plaintiff another injection in her right sacroiliac joint and noted she had trouble balancing, difficulty ambulating and used a cane. She had fallen "periodically." Tr. 254. Dr. Chestnutt

7   - OPINION AND ORDER

diagnosed: bilateral hip and buttock pain and sacroiliac joint pain, ataxia due to mechanical issues; and anxiety and depression. Id.

Plaintiff was then treated at Kaiser East Moreland from February 17, 2006, through May 6, 2006 for depression, trochanteric bursitis, and arthralgia of the shoulder. Tr. 474-534. On April 6, 2006, plaintiff underwent an outpatient consultation for right hip pain, right foot and ankle pain, right knee pain, right shoulder pain and low back pain. Tr. 493-96. Dr. Kim performed a physical examination and reviewed prior x-rays. He opined that plaintiff's shoulder pain was most likely acromioclavicular joint arthritis, along with probable bicipital tendonosis or tendinitis, as well as tendonosis or tendinitis. Plaintiff's low back pain was most likely secondary to sacroiliac joint pain. The hip pain was likely secondary to iliotibial band syndrome and possibly also worsening trochanteric bursitis. Her knee pain was also found to be related to plaintiff's iliotibial band syndrome. Id.

The ALJ acknowledges that both Dr. Chestnutt and the Kaiser physicians diagnosed plaintiff with trochanteric bursitis and lateral epicondylitis (damaged tendons causing elbow and forearm pain). Tr. 29-30. After x-rays were administered at Kaiser in January 2006, treating doctors diagnosed plaintiff with shoulder pain likely secondary to acromioclavicular joint arthritis and bicipital tendinitis, as well as supraspinatus tendonosis or tendinitis. Tr. 30. The ALJ fails to provide any reasons for rejecting these treating doctors' opinions, other than the comment: "while she has been diagnosed with bursitis and

8   - OPINION AND ORDER

tendinitis on various occasions, there is no evidence these impairments resulted in any significant work related functional limitations for any 12 month period." Id. While true that the treating physicians did not complete a RFC assessment form, whether plaintiff's impairments result in any functional limitations is unknown from the record. Further, medical reports are designed to promote medical treatment and not document disability factors, therefore the lack of functional assessment in the medical reports is not significant or determinative of disability. The Ninth Circuit holds that "[w]hen an examining physician relies on the same clinical findings as a treating physician, but differs only in his or her conclusions, the conclusions of the examining physician are not "substantial evidence." Murray v. Heckler, 722 F.2d 499, 501-02 (9th Cir. 1983). That is the situation at bar. The ALJ erred by dismissing the opinions of plaintiff's treating physicians regarding her physical limitations and accepting Dr. Webster's opinion without providing specific and legitimate reasons for doing so supported by substantial evidence in the record. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(internal quotation omitted). The ALJ had a duty to contact plaintiff's doctors to assess her physical limitations pursuant to his duty to develop the record. See 20 C.F.R. § 404.944 ("[a]t the hearing, the [ALJ] looks fully into the issues, questions you and the other witnesses, and accepts as evidence any documents that are material to the issues."); 20 C.F.R. § 416.912(e)("we will seek additional evidence of clarification from your medical source when the report from your medical source contains a conflict or

9  - OPINION AND ORDER

ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical laboratory diagnostic testing."). I find the record does not contain sufficient evidence to make a thorough assessment of plaintiff's physical limitations based on impairments diagnosed by plaintiff's treating physicians. The ALJ's severity finding is unsupported by the evidence, therefore, this case is remanded back to the ALJ for further proceedings. Specifically, to determine the extent of plaintiff's physical functional limitations, if any, based on plaintiff's diagnosed impairments.

## CONCLUSION

The Commissioner's decision is not based on substantial evidence. Therefore, this case is reversed and remanded for additional administrative proceedings as outlined above.

IT IS SO ORDERED.

Dated this __25__ day of August 2008.


                                    /s/ Ann Aiken
                                    Ann Aiken
                            United States District Judge

10   - OPINION AND ORDER